## Jane M. Gay *vs.* Rufus B. Kingsley.

An indorsement of a promissory note by a husband to his wife will not vest in her a valid title to it; and if he has afterwards gone into insolvency, and then died, and the assignee in insolvency has had no knowledge of the existence of the note, and has never authorized an action to be brought thereon, she cannot maintain an action to recover the same as administratrix of his estate. And proof that the debtor duly filed schedules of his assets and creditors, which have since been lost, and took the debtors' oath required by law, is not sufficient to show that the assignee had such knowledge.

Contract upon two promissory notes signed by the defendant and payable to James Gay or order. The controversy here

was only upon one of the notes, which was for $889, dated Jan uary 9th 1849, payable in thirty days after date, and attested by a subscribing witness. The plaintiff was administratrix of the estate of James Gay, and the declaration simply alleged that the defendant made the note, (setting out a copy,) and that he owed the amount thereof with interest.

At the trial in the superior court, before *Morton*, J., the plaintiff introduced evidence tending to prove the making and delivery of the note by the defendant to her intestate. No payment was ever made thereon. The defendant introduced evidence to show that the plaintiff went into insolvency in 1853; that an assignee was appointed, who received no assets, and had never given to the intestate or the plaintiff any authority to act for him in regard to this note; that schedules of the debtor's assets and creditors were filed, but had been taken from the files by the assignee, leaving a receipt, as was customary at that time that the defendant was then perfectly solvent, and had an office in Boston; that the debtor took the debtor's oath, required by law; and that he had gone to the war three or four years ago, had not returned, and no one had charge of his business in Boston, where he had previously resided.

The plaintiff then offered evidence to show that in 1851 or 1852 the note was given by James Gay to her as a present, moving directly from him to her, by delivery, it being then indorsed by him; that she retained it till 1858, when she lent it to him and he pledged it as security for a loan of money, a part of which he gave to her, and the pledgee had returned it to her counsel after her husband's death for the purpose of having it sued, with the understanding that he should receive the amount of his claim out of the judgment.

The defendant then requested the court to instruct the jury, upon the pleadings and evidence, that if anything was due from the defendant upon the note, the assignee could sue for it in his own name; and that if they should find that the assignee had never in fact received the note, nor had notice of its existence, and that he had not authorized the intestate or the plaintiff to act on his behalf in regard to the note, or in bringing this action,

then the plaintiff was a mere naked depositary of the note, and this action could not be maintained in her name.

The judge declined so to instruct the jury, but ruled upon this part of the case that the evidence in the case did not establish a defence of which the defendant could avail himself, provided the jury were satisfied that the note was given upon a sufficient consideration, and had not been paid or otherwise discharged.

The jury returned a verdict for the plaintiff, and the defendant alleged exceptions.

*C. W. Storey*, for the defendant, cited *Smith* v. *Chandler*, 3 Gray, 392; *Johnson* v. *Neale*, 6 Allen, 228; *Slawson* v. *Loring*, 5 Allen, 340; *Pitts* v. *Holmes*, 10 Cush. 92; *Davis* v. *Newton*, 6 Met. 542; *Conkey* v. *Kingman*, 24 Pick. 115; *Sherwood* v. *Roys,* 14 Pick. 172.

*J. L. English*, for the plaintiff. The defendant cannot set up a title of the assignee in insolvency, who makes no claim. *Hallett* v. *Fowler*, 8 Allen, 93. *Fogg,* v. *Willcutt*, 1 Cush. 300. *Sawtelle* v. *Rollins*, 23 Maine, 196. Where the assignee intervenes it is different. *Smith* v. *Chandler*, 3 Gray, 392. *Kitchen* v. *Bartsch*, 7 East, 53. The assignee has an election whether to take or waive his title to a part of the assets. 1 Deac. Bankr. 340. *Fogg* v. *Willcutt*, above cited. *Smith* v. *Gordon*, 6 Law Reporter, 313. The only interest Gay had in the note at the time of his insolvency was a husband's right to reduce it to possession. His prior gift to his wife was good except as against creditors. *Fisk* v. *Cushman*, 6 Cush. 24. *Turner* v. *Nye*, 7 Allen, 181. *Slawson* v. *Loring*, 5 Allen, 340. It being a wife's chose in action, she was entitled to her provision out of it if the assignee claimed it. *Davis* v. *Newton*, 6 Met. 537. The assignee may well have doubted as to this note, and elected not to take it. After so long a time, the presumption is that he did his duty, and it is too late for him to claim it now. *Smith* v. *Gordon,* and Deac. Bankr., above cited. The schedules filed gave him full notice. The title of the pledgee is good as against everybody but the assignee. *Drayton* v. *Dale*, 3 D. & R. 534.

CHAPMAN, J. By the common law, a husband and wife could not contract with each other, and our recent statutes relating to

the property and rights of married women have made no change in this respect. *Lord* v. *Parker*, 3 Allen, 129. *Edwards* v. *Stevens*, Ib. 315. *Ingham* v. *White*, 4 Allen, 412. In the case of *Slawson* v. *Loring*, 5 Allen, 340, the remark of the court that the title to the note passed to the wife by the indorsement of the husband during coverture was not intended to imply that a husband could make a valid contract of indorsement with his wife. The remark is to be taken in connection with the whole case, by which it appeared that she acted merely as his agent, and that by the indorsement to her, and by her to Dupee, Beck & Sayles, it was intended that she should be a mere conduit in passing the title of the note to them, for the benefit of the plaintiff, and as his agent, she never pretending to have any interest in the transaction.

But in the present case the husband, being the payee of the note, indorsed it, and delivered it to his wife as a present. It remained his note in her hands as completely as ever, and her possession was his possession. This was in 1851 or 1852; and when his assignment in insolvency was made in 1853, the legal title to the note passed thereby to his assignee. *Smith* v. *Chandler*, 3 Gray, 392. By the case last cited it is decided that if the note had been made payable to the wife, the assignment would constitute a valid defence to the action, if the assignee should claim the note. If he had knowledge of its existence he might not be obliged to claim it; and if he declined to do so, the insolvency might not be a valid defence. *Hallett* v. *Fowler*, 8 Allen, 93. But this case is different. It does not appear that the assignee had knowledge of the existence of the note in suit, and he or any new assignee to be appointed in the case has the legal right to collect it. As a general rule, the defendant cannot set up a title in a third person, in defence to an action upon a note like this, which the plaintiff holds and produces in court, there being no fraud proved. *Fogg* v. *Willcutt*, 1 Cush. 300. The plaintiff has the title against all persons except the assignee, and may enforce it if the assignee does not intervene. *Clark* v *Calvert*, 3 Moore, 96. But if the plaintiff and her husband concealed all knowledge of the existence of the note from the

assignee, he could not have assented to their retaining the possession of it. The legal title was in him, and their possession gave them no more title to the note than if he had lost it, and they held it as mere finders. Certainly they could have no better title than if they were his depositaries, and as such they could not maintain an action upon the note. *Sherwood* v. *Roys*, 14 Pick. 172. In order to maintain this action as administratrix the plaintiff must satisfy the jury that her husband held the note either as trustee of the assignee or as his own property. He might hold it as his own if the assignee, with knowledge of its existence, declined to claim it. But if it has been secretly withheld from the assignee, it has been held fraudulently.

*Exceptions sustained.*